Case number 092285, Brian Cacciatore v. Jennifer Cacciatore. You emptied the courtroom. Victoria Benson on behalf of Jennifer Cacciatore. Brian Schroeder for the plaintiff, Your Honor. I hope it wasn't something we're about to say that made everybody think. All right. Well, you saw we give pretty much leeway. So don't stay here all afternoon, but you may proceed. Again, Brian Schroeder for the plaintiff, Frank J. Cacciatore. We're hearing a field from the Assertive Courts granting of summary judgment on counts two through four of our complaint. As we set forth in the record and in the filings below, there are several genuine issues of material fact that precluded and made it erroneous for the circuit court to enter summary judgment. First of which concerns the existence of a fiduciary relationship between the decedent, Frank S. Cacciatore, and the defendant, Jennifer Cacciatore, who is the daughter of Frank S. and the sister of plaintiff Frank J. As the record shows, the decedent and Jennifer lived together for about 25 years, if not longer. Jennifer was involved in taking care of the decedent on a day-to-day basis, and they engaged in various business transactions based upon the case law that was cited below and that we cite. That alone creates a question of fact as to whether and when a fiduciary relationship arose between Frank S. and Jennifer. Where do you have law saying that those facts in and of themselves create a fact issue, as opposed to cases, I thought, that have held that those facts by themselves are not sufficient to raise any inferences of a fiduciary relationship? And in this particular case, particularly so, since there were unrefuted affidavits from the doctor, from the other son, as well as from the defendant, showing that this man transacted his real estate business almost virtually until the day he died. And his business, I mean, I suppose we can take notice that when you're dealing with street or villa addresses, that they're not simply insignificant. The case law I'm relying upon, Your Honor, is several. First of all, the cases that set forth the factors to be considered in determining whether a fiduciary relationship exists, and that includes the familial relationship of the parties, the age disparity, how long they've lived together, whether there's confidence reposed in the alleged agent. That's what I'm relying upon. Well, there was no case law here. There was no fact presented here that showed reliance on Jennifer for financial assistance. My response to that, Your Honor, is that the affidavits that were submitted by Jennifer and some of the other siblings, first of all, Jennifer's affidavits certainly could be considered self-serving since she is a named defendant. Yeah, but there's nothing here to the contrary to show that there was any reliance on any financial matters. Well, to an extent, Your Honor, actually to a very significant extent. That is sort of a moot point because as of March 2002, as Jennifer's brief itself admits, and this was argued below, a fiduciary relationship was created as a matter of law when a power of attorney was executed. All right. Well, okay. If we get to the matter of law, that's a different facet entirely. Correct. Because the power of attorney creates a fiduciary relationship, which as a result shifts the burden of proof in showing that the transaction was not fraudulent or created by undue influence. Indeed. And I think what I started off trying to say is – But the transactions prior to 2002, and I think that involved the transfer of the Bellevue properties, did it not? The Bellevue property was transferred, I think, in 1998 or early 2012. Okay. So that preceded the granting of the power of attorney. Then there's the question of the Halstead properties, and on the Halstead properties there is no evidence presented that they ever belonged to the decedent. All the evidence in the case that was presented showed that these were direct transactions between Jennifer and third-party owners. So that seems to be out of the picture. Isn't that correct? For both properties, I would submit no. And the reason is, as of March – Why would you throw the Halstead properties into this? Because our complaint alleges that the decedent and his son, my client Plaintiff Frank Jr., had agreements in which, while title will be held solely in Frank Sr.'s name, that they in fact intended – Well, that's the complaint. But once the complaint is traversed by affidavit, the complaint fades away. But the affidavits – What affidavits do you have showing a financial interest by Frank in the Halstead properties? I would submit that I don't need any, because the affidavits that were submitted by Jennifer and the other siblings do not speak to that issue that was raised in the complaint about the agreement between father and son, Frank S. and Frank J., about ownership of those two units. Those affidavits don't talk about it. Jennifer's affidavit does discuss the paperwork about title for the Halstead property, but she does not say anything about this agreement that the complaint alleges existed between father and son. And therefore, those affidavits don't dispel anything about the complaint. Does she have to address the affidavits if she addresses the passage of the title? I think she does, because the complaint wasn't alleging title. The complaint alleged the two Franks, father and son, bought property to be held in Elder Frank, father's name, but the intention of the two parties involved, father and son, was that Frank, Jr., the son, would in fact also be a title holder. And I think that does need to be refuted. And I do agree that the case law does exist, that if something's raised in affidavit and it's not countered by a counter affidavit, it's taken as true, we're submitting that there was no affidavit to that effect that was raised. So our complaint, our allegation, still stands on that issue as being unrefuted. And the Halstead property, which was deeded to Jennifer in 2003, that was after March of 2002 naturally, therefore after the creation of a fiduciary relationship, and therefore that transaction has to be considered presumptively fraudulent. As for the transfer of the Belgium property, that's what I was sort of driving at when I first started my opening remarks, is that as of March 2002, or May, I'm sorry, whichever it was, there was no dispute that there was a fiduciary relationship. Before that time, there was a question of fact in our judgment as to when it may have risen by virtue of the fact that they lived together. That's assuming, again, that the mere fact that they lived together, the mere fact of their familial relationship, the mere fact of the disparity in age, the mere fact that there may have been services performed, but are sufficient to create an inference of a fiduciary relationship so as to characterize any counter-affidavits as genuine issues of material fact. And the case law doesn't seem to go in that direction at all. Those four factors or five factors that you enumerated are not by themselves indicators of a fiduciary relationship. Otherwise, you would really have a genuine issue of material fact among any familial members who happen to share the same domicile. Unfortunately, the record's going to be where it is today. And that's not the way the cases seem to go, in my estimation. I would be curious to see where you're going to take us with the existing precedent. Where I'm going to take you is the cases I cited in argument section one of my brief, which is the general presumptions on summary judgment. And I'm not seeking judgment for my client here. I didn't below, or I wasn't attorney of record below. But the inferences, the undisputed facts are that they lived together, that there was obviously a difference in age, there was a familial relationship, and there was, in fact, transactions that Jennifer and Frank engaged in. When all those are construed strictly in my client's favor, which is what is done in summary judgment, we believe that there is a question of fact here. Now, if you don't, you don't. But I don't have a case that says when you have what I have here, that means per se or forevermore you lose on summary judgment. That's what I'm advocating here. But I think the real heart of this case concerns what happened after fiduciary relationship. With respect to the will, the will and the power of attorney were evidently executed on the same day. Contemporaneously, yes. Well, what does contemporaneously mean? Well, was the right-hand writing signing the one and the left the other? Which occurred first in time, I don't know, Your Honor. Well, wouldn't it make a difference? No. Why not? Because the two were executed the same day, they should be considered in practicality and functionally a single event. Do you have any case law for that? Do I have any case law that says that? I have common sense, but no, I don't have any specific case law that says that. Well, because if the fiduciary relationship is imposed by operation of law, then common sense has a more distant application to its evaluation. If it's a technical result, then until you sign the power of attorney, you're not a fiduciary. I'm going to agree with that. Until it's signed, you're not. But it's not as if we're saying, and again, there aren't any facts of the subsequent inter vivos transfers that count three seeks to set aside did not occur like minutes or seconds later. It's not like we're alleging that the power of attorney was signed at noon on May 1st, and then at 12.05, Jennifer went to a bank and did something. The evidence as those transactions come out, which they're not in the record, will show when they occur. Transactions that occur a day later are subject to the fiduciary relationship already imposed by the execution of the power of attorney the day before. But in terms of the will, the question is, was there a fiduciary relationship as a matter of law at the time the will was executed? And if, in fact, the will was executed at 12.00 and the power of attorney at 12.30, there's at least a question to be resolved here of which common sense may play a role, but a very tenuous one in the absence of some precedent. Well, let's keep in mind, Your Honor, that the count one of our complaint, which sought to set aside the will, was voluntarily dismissed. So the execution of the will in and of itself really is secondary in our position. The real key here is the execution of the power of attorney and the duties and presumptions. Well, aren't you litigating? Aren't you challenging the will? Aren't you contesting it? No, count one was voluntarily dismissed. We're not. All right. So you don't really care about the will. Well, I will, in candor, count two of our complaint, which was subject to summary judgment, was a count for tortious interference with inheritance expectancy. So that does have a relation to the execution of the will. But we're not seeking to set aside the will. That was count one, and count one was voluntary. Well, but how does a tortious interference count stand up without first showing a fiduciary relationship as of the time the will was interfered with? Well, if we can't show a fiduciary relationship, we still could try and show it. In fact, it's more distant, isn't it? Because I suppose tortious interference doesn't depend on the exact moment the will is signed, but on events leading up to the signature, and those clearly occurred before the power of attorney was executed. That's a valid point, Your Honor. I think there's two ways we can try and set aside or not set aside the will. Present a tortious interference claim. One is through power of attorney and the presumption of fraud that that creates. But then independent of that. That doesn't happen if the power of attorney wasn't in existence when the will was executed. True, but we don't know which came first, which is a question of fact. We don't know. We know that they were done the same day, presumably. So how do we resolve that? Remand for further proceedings because we have to determine which came first. There's a question of fact on this issue. That's how you determine it. That's how it gets resolved. If it turns out that. . . The move-in. The move-in. And if the move-in can't tell us. . . I presume you've had opportunity to take discovery here. Isn't the burden on you? And if you don't tell us, don't we then presume that there is no issue of fact? I'm not the move-in. You can't simply tell us that since they're described as being simultaneous when, in fact, according to all of the laws of physics, chemistry, astronomy, the time considerations, Hawkins, one would have to precede the other. And if you don't tell us that the power of attorney preceded the will, why should we even engage in speculating that there's an issue of law here? Because. . . That there's an issue of fact. I was not the move-in below. Jennifer was. It's her burden to show as the move-in on summary judgment that there's no question of material fact. There's no evidence as to which came first, but it was not my burden to show which was first. And, again, this discussion we're having now only goes to count two, the count of two regarding tortious interference. It does not change the fact of count three, which is all the inter vivos transfers, because those occurred, our allegations are, after the execution of the power of attorney, and we don't have any evidence of when those occurred either, which, again, in our position, creates a question of fact, which it was Jennifer's burden to show. We don't have any evidence of when these transactions took place. That's what we need. But that's my answer. It was Jennifer's burden below to show which document was executed first. Although they were signed simultaneously, isn't it true that there had to be some direction to the lawyer about what to put in this will? Presumably, certainly there was. And he met with the lawyer by himself without Jennifer or the brother. They both went to the office, but he met with the attorney by himself and gave instructions. Yes. Those instructions were actually executed later, but he actually told the lawyer what to do before any power of attorney was signed. You're correct, Your Honor. There were, I think, three meetings, one of which Jennifer attended. I think it may have been the first meeting. But there is nothing to show, is there, that she was, and that's really the third factor. It's not enough with regard to the execution of a will to show the existence of a fiduciary relationship. There's a third factor. You have to show that the fiduciary procured the execution of the will. That's not her burden to show that she didn't. That's the burden of whoever wants to vitiate, contest the will, to show that she procured. So you have to show, you can clearly show a fiduciary relationship if we assume that simultaneous means just that. And I'm going to let go of that question for the time being. So let's assume that the power of attorney is signed first, and she is clearly a fiduciary. That's not enough to vitiate the will, according to Kessler. You have to show that she was instrumental in procuring it. How do you do that? I haven't seen that in your submission. Well, that's probably why the count to non-suit the will was non-suited, Your Honor. What's that? That's probably why the count, count one, to set aside the will was non-suited is my informed judgment. But it no longer will sustain your tortious interference count either. When one collapses, it's likely that the other does thereafter. If you're, in order to do that, to make that. Because that's the only spot. The execution of the will is the only place in the universe of, in the time continuum, where she might have been a fiduciary as a matter of law. All of the other interference would have taken place before, and in order for us to topple, to follow you there, we would have to agree with you that you sufficiently established existence of a fiduciary relationship as a matter of fact. And I think you can tell, at least from my tenor, that I'm having trouble with that. I get that loud and clear, Your Honor. And, you know, on appeal, you play the hand you're dealt. Of course. The record is as it is. Of course. I've put forth the best foot I have. And you have. And the only way, if we're essentially going to say, which you are, that the count two for tortious interference falls, ipso facto by the fact that we can't show that Jennifer was procured the will, then you're essentially conflating or suggesting the two have the same, at least some of the same elements. Well, if she did not procure the signing of the will, then whatever she did before she would have done without the cloak of fiduciary being cast upon her as a matter of law. That would only have impact, as I said, if we would find that she was a fiduciary as a matter of fact or that she raised an inference. Another way, I guess, another argument to make on this is that since it was obvious that, as was mentioned before in the question, that there were communications before these documents were signed, it's not as if they just walked in and this attorney magically created these documents on the spot and everyone signed them. The intention walking in was to sign the power of attorney and the will. You can argue from that that there were some obligations as a result of that. But the intention to sign the power of attorney as a basis for finding that she was a fiduciary would be to find her a fiduciary as a matter of fact because she was in the mode of intending to sign it, which would have made her a fiduciary as a matter of law. It's a difficult mind twist, I think. That's why you're there and I'm here. I get to ask for everything under the sun and you get to decide what's reasonable or not. Well, I think you have to do some sifting along with the rest of us. This is unusual. I'm trying to do my best. Of course. But, again, this discussion, again, to beat a horse, beat a dead horse, I guess, does not affect count three or count four. We've already talked about count four, which talks about the two properties issue, and I've made my spiel about that. But count three, the interview goes transfers. Well, then you still have to prove that she did not overcome. You would still have to tell us why she wouldn't have overcome the presumption of fraud or undue influence based on her submissions and your lack of them. Well, read the affidavits. Her affidavit, Jennifer's affidavit, primarily talks about the real estate transactions. It does say, I never pressured my father into doing anything, which is self-serving. One of the other affidavits simply says, but it does not have to and I would submit should not be considered as true. What do you have, Your Honor? The other affidavit, one of the other sons, he was John or James, said that he assumed his father wanted to bequeath all property to Jennifer and he inferred from statements that Frank Sr. made that that's what Frank Sr. wanted. That's not enough to win on a summary judgment motion. That doesn't mean, first of all, it's conclusory. It doesn't explain the basis for those things. Well, what do you have to show before they have to show anything more? Well, as I said before, I don't think I had to show, given what they presented, we don't think we had to show anything, except the facts as we've laid out so far.  That's the fact that you have, following 2002, you have the presumption.  That's what really, I mean, the other events in time are relevant, but the heart of this is what happened between 2002 when the perpetrator was executed and then Frank Sr.'s death. That's the central heart of this case. And on that issue, the law is, in our judgment certainly, on our side in that all transactions are presumptively fraudulent and it therefore is Jennifer's burden to explain. But that's a rebuttable presumption. Certainly. And it can be rebutted on summary judgment, can it not? Well, it can, but here it hasn't been. Her affidavits, the two affidavits of the other siblings, John and James, don't talk about any of the inter vivos transfers. Jennifer's affidavit talks about the property transfers primarily and the references it makes to, I think it says only, I didn't pressure my father into doing anything. That doesn't dispel the presumption of fraud once you have a fiduciary relationship. And therefore, she should not prevail on summary judgment. Well, suppose she were in front of a jury and that's all the evidence that was presented. And you argued presumption. What chances would you have of winning? Or, in other words, I'm not asking something clearly out of the woods because you don't get a trial unless there's an issue of fact, except that the Supreme Court, in the standard that it applies to summary judgment, applies the standard that's applied for judgments notwithstanding the verdict. So that if the evidence is overwhelming, you can still grant the summary judgment. And if you don't have any rebuttal, then all you have is legally arguing the presumption. If she testifies to what she testifies, isn't the evidence overwhelming at that point? She hasn't testified yet. But I'm assuming I'm transplanting her affidavit into a court seat. Right. If she testifies at trial and says there's ten transactions here that happened after I was part of the attorney, and lays out what happened and explains each one, and I sit back and I say, well, it's presumptively fraudulent. But you present no other evidence. If I present no other evidence, then I might lose on a directed verdict. But if you lose on a directed verdict, then according to Fudin and a number of other Supreme Court decisions, you lose on summary judgment. She hasn't presented that evidence, though. In her affidavit. We believe that affidavit isn't enough. It doesn't detail a single inter vivos transfer transaction and does not provide any explanation as to why it occurred or at whose behest, what purpose it served, when it occurred, who was present, anything. Therefore, she can't simply say it was all good and have the circuit court or this court respectfully say that's fine with us. That's not what she did, and it was her burden to do, and she didn't. I may lose a trial, but the point is we should get a trial, because as it stands right now, the presumption has not been rebutted. She may rebut it down the line, a jury may accept her version, and if it does, then we are where that takes us. That being said, we would ask that you reverse the circuit court's ruling and reinstate counts two through four of the complaint. Thank you. Thank you. Good morning, Your Honors. I guess I'll start first. It's our position that summary judgment should be affirmed in this matter, because the plaintiff failed to present any evidence whatsoever that a genuine issue of material fact existed at the time the motion for summary judgment was heard and presented. The evidence presented in the motion for summary judgment, still as of today's date, remains completely unrefuted, and the facts that were developed. The question, though, interposed here, if we can shift, is in post-2002, where she is presumed to be a fiduciary and has the burden of overcoming that presumption. You, on your side, have the burden of traversing the allegations in the complaint. If you want to eliminate the complaint as a player in determining whether there's an issue of fact, and have you effectively traversed the allegations in the complaint that she used undue influence, at least with respect to the post-2002 transactions, so that the complaint doesn't stand here as if it were an affiant? First, I believe we did. As you pointed out, the affidavit of my client addresses the transfer of the accounts into joint accounts. Furthermore, in the deposition of Attorney Murphy, who was Mr. Cacciatore's attorney at the time and who conducted not only the will, but also the Bellevue transfer, testified that part of Mr. Cacciatore's estate plan was to minimize the transfer of assets that would have to go through probate. And in doing that, he effectively, it's our position, those inter vivos transfers of the accounts included in that. Now, I do want to point out, Ms. Cacciatore's deposition was taken as part of this. I think it's interesting that no part of that was attached to that response to the motion for summary judgment. They had their opportunity to ask her in detail and did ask her about those transfers. Yet none of that was presented. Well, you were the move-in, so you had the first burden to eliminate in your presentation to basically erase those allegations in the complaint that said that she used undue influence on those transfers. And I think when you go through the facts and the evidence that was presented, not only by the affidavits of my client, but her two brothers, the doctor, and the deposition testimony of Attorney Murphy, those talk about the relationship between them. And I understand that once a power of attorney is executed, that as a matter of law, a fiduciary relationship exists. However, I think that's refuted by the fact that Attorney Murphy testified himself that in making his recommendations for their estate planning, that if this is how he wanted to minimize what had to go through probate, these accounts and the Bellevue property had to be held as joint. This way, Mr. Cacciatore would not lose his interest, and it would also minimize what went through that. I think based on Attorney Murphy's testimony, I think we adequately did that, not including my own client's testimony. Did your own client, did you submit the entire deposition of your client? Her deposition was taken after we submitted the affidavit. So we had filed our motion with the affidavit attached. He was given leave to take her deposition after the motion was filed. Then that deposition was not necessarily presented to the court in its totality? No, it wasn't. I fully admit that. It was not presented to the court. And I feel it's not my position. How about Murphy's? Murphy's was. Okay. I mean, it's my position. I attached an affidavit of my client to my motion. The plaintiff was given a chance to take her deposition and didn't attach it. Well, for my part, I'm not at this juncture saying your affidavit was insufficient. Right, but it was not. I'm only listening to the argument. But it was not included. And I think that that's a significant point here is that they not only took her deposition and had the opportunity to present the evidence that he's talking about right now is missing, detailed questions about those real estate tractions, information that he feels still needs to be seen. But that starts once you traverse their allegations and their pleading. And that's the important starting point. And I agree with you. I think between my client's affidavits, the additional affidavits, and Attorney Murphy's testimony, but also he can't just stand behind his complaint and create a question of material facts. Well, he can if you don't traverse. But we did. I mean, in my opinion, the affidavits specifically address that those joint accounts were transferred or those accounts were transferred into joint accounts at the request of their father and without any pressure of my client. What date were those accounts transferred? Was that prior to the power of attorney or after? I apologize. I don't know off the top of my head. I believe some of them may have been transferred before the will was executed. But I think the majority of them did occur after that. The affidavit did not address that issue, the date. It did not. Okay. And I think as we're focusing on the occurrences between 2002 and 2006, I think the issue of the properties is the constructive trust is incredibly important here because it's almost as if in making this appeal that the plaintiff has completely, has not only presented anything to refute the evidence I presented below, but is almost ignoring certain facts. For example, the Halstead property. The plaintiff can put in his complaint that he had an agreement with his father that the two of them would have a joint interest in that property, even though the property was in his father's name. As we show not only through the affidavit of my client, but also the attachments of the closing documents, the real estate agreement, the mortgage documents, that property was never held in the name of their father. Spell that out. What did you present that, by way of your submissions, that would traverse basically deny the allegations that they were held in, which admit that they were held in her name, but only as a nominee? Attached to her affidavit, which was attached to our motion for summary judgment, and I apologize, I wish I would have written this down on the record beforehand, but we had attached a copy of the real estate agreement, a copy of the mortgage, a copy of the, I apologize, the property was originally actually bought through a trust. We attached the trust documents, all in support of her affidavit, that she was always the sole owner of that property, and that her father never had an interest in it. And that's stated in the affidavit as well. She does mouth that in her affidavit? Yes, that she was the sole owner of that property, and as exhibits we attached all of the documents. So his name doesn't appear on any? No. Okay. She purchased it from a third party. Right, that we saw, but I'm just trying to figure out how that property shows him in any way. I mean, and this is more just as a, for further ratification of the court, and this isn't, I think, laid out very clearly in the record, is that the father did maintain an office in the building. It was a two flat, there were apartments on the second floor, the first floor was office space. The father had an office in there. But in the contract documents, it's always been my client. And as for the Bellevue property, I think we've rebutted that presumption as well by the fact that the decision to make his ownership interest in the LLC that owned the Bellevue property was transferred to a joint interest. It was at the recommendation of Attorney Murphy. So the Bellevue properties were before the power of attorney? Preceding? No, these are after. Subsequent? This is after. This is after. I believe it was November of 2003 is when the assignment was executed. So he only had a third or less interest. And that interest got smaller and smaller as it went on. But he had a third interest in it, and by November 2003, under the advice of Attorney Murphy, he had transferred that interest to a joint interest in the property. He had the independent advice of someone with whom he'd been doing business with for years and who the family had known personally for years. This was not done at any insistence or suggestion of my client. And I think the fact that Attorney Murphy testified at length about that transfer rebutted any presumption, which we still believe did not exist, for undue influence. So I think even if this Court assumes that there was a fiduciary relationship based on the power of attorney and that, as a result, any transactions thereafter were the result of undue influence, we've rebutted that through the testimony of Attorney Murphy, the affidavits of my client, and the documents that are attached to those affidavits. And I think unless there's any further questions, it's our position that the motion for summary judgment, the award of summary judgment be confirmed. Thank you. Thank you. Thank you, Your Honors. The affidavits of Jennifer Cacciatore at pages 218 through 221 of the record, it's four pages. I'm not going to read it all. The first three pages have nothing to do or shouldn't. Let me back up. The first three pages talk about the will, the property transfers, nothing about any of these inter vivos transfers. The fourth page, which is two paragraphs, says that I did not pressure or manipulate my father into converting his personal accounts and other accounts into joint accounts with myself. That the conversion of those accounts into joint accounts was done at the request of my father, Frank S. Cacciatore. That's it. No itemization said before of what they were, when they occurred, why, who, where, when. The Miller case, which I cited in our brief, says once a fiduciary relationship exists, the presumption arises that all transactions with the agent are presumptively fraudulent and is the agent's burden approved by clear and convincing evidence that the transaction was fair and equitable and did not result from the agent's undue influence. These two sentences we submit come nowhere close to doing that. That is why summary judgment was improperly granted. The plaintiff, I'm sorry, the defendant never carried her initial burden of showing that these transactions were proper. You never challenged the defendants? You never said to strike them because they were conclusory? There's no motion to strike, Your Honor. You never took deposition testimony from Jennifer S. to those allegations? I honestly don't know if her deposition was taken or not. I did not participate below. If it was, it's not in the record and it doesn't really matter what the deposition says. This affidavit, I don't think. What else could she have said other than putting in times and identifying documents? If she makes an inclusive statement for all of these documents, what more could she have said with regard to her involvement than what she did say? Maybe she didn't. I don't know. Maybe she wasn't questioned about that. Maybe at the time her deposition was taken, the focus of the questioning was on the procurement of the will. Because that is the real estate transactions and the procurement of the will are the bulk of the focus of the affidavit. I mean, again, the last two paragraphs, two sentences of a three-and-a-half-page affidavit, is all it said about these inter vivos transactions. So I guess that's my answer. There was no motion to strike because the evidence stands for, the affidavit stands for what it's worth. And if those two sentences are going to be considered clear and convincing evidence of propriety in all of the transactions, whatever they may have been, then affirm. I don't think that's the case. I don't think that's enough. Well, there's other evidence besides her testimony, her deposition testimony here, that would seem to also accrue with that, such as the doctor's testimony as to his own lucidity, the fact that he engaged in substantial business transactions on his own, the depositions of the brother, doesn't that evidence accrue with the statements made in these affidavits in determining whether there's clear and convincing evidence here, plus the fact that there is not a shred of evidence other than the presumption introduced in its reputation? Well, let's look at that evidence. First of all, the only deposition in the record is Attorney Murphy. He did not testify at all about any of these inter vivos transfers. So let's deal with that. Next is the John or James Cacciatore, and their affidavits are on pages 231 through 234 of the record. They talk about the will and their father being of sound mind, and I think maybe they talk about the fact that he engaged in a real estate practice. How about the doctor? Okay, the doctor says the guy was of sound mind as far as he saw him when he came in for office visits, but the Hoover case says that lack of testimony capacity is not the same as undue influence. In other words, you can be of sound mind and still be subject to undue influence. I've been here long enough to know that I signed off on the Hoover case. A wise decision. So you get to rely upon yourself then. That's good. Yeah, he's gotten away with this all day. You notice we're not saying much here. He's had a ball game all day. It was Justice McNulty's case, but I was at the hearing. I hope I held up to the barrage as well. But the point is the fact that he was of sound mind, again, is only as good as far as it goes. And I would submit in doing what I did. But it goes some distance. Well, it does go somewhere, but does it rise to clear and convincing evidence? I mean, we have an aggregate of evidence here, which we should look at. The point that I'm making for you is that the affidavit does not stand alone, that you look at the aggregate of all of the evidence in its totality as well as its individual merit. I agree with that entirely. And our position is once you look at all that, quote, evidence, we expect and hope you would agree that it does not rise to the level of clear and convincing to defeat the presumption of fraud. So for that reason, we would, again, answer to you. Are we allowed to make inferences from the fact that you don't present any counter evidence? No, I don't think you can. I think the argument here is once you construe all the evidence as it stands strictly against Jennifer and liberally in favor of me, my client, that is, have we presented a factual basis that would arguably entitle us to judgment? And I would rather prefer that we presented an avalanche of evidence, but in this case what we have is a presumption of fraud that we submit has not yet been rebutted and remains to be addressed down the line. Okay, thanks. Thank you very much.